1  STEPHANIE YONEKURA
   Acting United States Attorney
2  ROBERT E. DUGDALE
   Assistant United States Attorney
3  Chief, Criminal Division
   ANNE PINGS (Cal. Bar No. 151624)
4  Assistant United States Attorney
   National Security Section
5       1300 United States Courthouse
        312 North Spring Street
6       Los Angeles, California 90012
        Telephone: (213) 894-7407
7       Facsimile: (213) 894-6436
        E-mail:    anne.pings@usdoj.gov
8
   Attorneys for Plaintiff
9  UNITED STATES OF AMERICA

10                 UNITED STATES DISTRICT COURT

11              FOR THE CENTRAL DISTRICT OF CALIFORNIA

12                      SOUTHERN DIVISION

13  UNITED STATES OF AMERICA,          SA CR No. CR 14-200-AG

14          Plaintiff,                 REVISED PLEA AGREEMENT

15              v.

16  MOHAMED M. MADNIA,

17          Defendant.

18

19      1.   This constitutes the plea agreement between MOHAMED M.

20  MADNIA ("defendant") and the United States Attorney's Office for the

21  Central District of California ("the USAO") in the investigation of

22  conspiracy to commit immigration fraud.  This agreement is limited to

23  the USAO and cannot bind any other federal, state, local, or foreign

24  prosecuting, enforcement, administrative, or regulatory authorities.

25                      DEFENDANT'S OBLIGATIONS

26      2.   Defendant agrees to:

27          a.   Give up the right to indictment by a grand jury and,

28  at the earliest opportunity requested by the USAO and provided by the

Court, appear and plead guilty to a 2-count information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with Conspiracy to Defraud the United States in violation of 18 U.S.C. § 371; and False Statement On Immigration Document in violation of 18 U.S.C. § 1546(a).

        b.   Not contest facts agreed to in this agreement.

        c.   Abide by all agreements regarding sentencing contained in this agreement.

        d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

        e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

        f.   Be truthful at all times with Pretrial Services, the United States Probation Office, and the Court.

        g.   Pay the applicable special assessments at or before the time of sentencing unless defendant lacks the ability to pay and prior to sentencing submits a completed financial statement on a form to be provided by the USAO.

    3.   Defendant further agrees to cooperate fully with the USAO, the Federal Bureau of Investigation ("FBI"), the Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), and Citizenship and Immigration Services ("USCIS"), as directed by the USAO, any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authority. This cooperation requires defendant to:

a. Respond truthfully and completely to all questions that may be put to defendant, whether in interviews, before a grand jury, or at any trial or other court proceeding.

b. Attend all meetings, grand jury sessions, trials or other proceedings at which defendant's presence is requested by the USAO or compelled by subpoena or court order.

c. Produce voluntarily all documents, records, or other tangible evidence relating to matters about which the USAO, or its designee, inquires.

d. Provide a DNA sample which will be used for law enforcement investigative purposes.

4. For purposes of this agreement: (1) "Cooperation Information" shall mean any statements made, or documents, records, tangible evidence, or other information provided after entering into this agreement, by defendant pursuant to defendant's cooperation under this agreement; and (2) "Plea Information" shall mean any statements made by defendant, under oath, at the guilty plea hearing and the agreed to factual basis statement in this agreement.

                    THE USAO'S OBLIGATIONS

5. The USAO agrees to:

a. Not contest facts agreed to in this agreement.

b. Abide by all agreements regarding sentencing contained in this agreement.

c. At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses] up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to

1  U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

2  additional one-level reduction if available under that section.

3          d.   Recommend that defendant be sentenced to a term of

4  imprisonment no higher than the low end of the applicable Sentencing

5  Guidelines range, and further recommend that defendant's federal

6  sentence in this case should be reduced by the number of days of

7  incarceration in a jail or prison that he has actually served as a

8  result of his conviction in the case of People of California v.

9  Mohamed Madnia, No. 14-CF-2483, pending in the Superior Court in

10  Orange County.  In addition, the United States agrees to further

11  recommend that the defendant's federal sentence in this case should

12  be reduced by any amount of additional months of imprisonment

13  reflected in the calculation of the sentencing guidelines as a result

14  of his accrual of criminal history points as a result of his

15  conviction and sentence in the case of People of California v.

16  Mohamed Madnia, No. 14-CF-2483, pending in the Superior Court in

17  Orange County.

18      6.   The USAO further agrees:

19          a.   Not to offer any Cooperation Information as evidence

20  in its case-in-chief in the above-captioned case or any other

21  criminal prosecution that may be brought against defendant by the

22  USAO, or in connection with any sentencing proceeding in any criminal

23  case that may be brought against defendant by the USAO.

24          b.   Defendant agrees, however, that the USAO may use both

25  Cooperation Information and Plea Information: (1) to obtain and

26  pursue leads to other evidence, which evidence may be used for any

27  purpose, including any criminal prosecution of defendant; (2) to

28  cross-examine defendant should defendant testify, or to rebut any

4

1   evidence offered, or argument or representation made, by defendant,

2   defendant's counsel, or a witness called by defendant in any trial,

3   sentencing hearing, or other court proceeding; and (3) in any

4   criminal prosecution of defendant for false statement, obstruction of

5   justice, or perjury.

6           c.   Not to use Cooperation Information against defendant

7   at sentencing for the purpose of determining the applicable guideline

8   range, including the appropriateness of an upward departure, or the

9   sentence to be imposed, and to recommend to the Court that

10  Cooperation Information not be used in determining the applicable

11  guideline range or the sentence to be imposed.  Defendant

12  understands, however, that Cooperation Information will be disclosed

13  to the probation office and the Court, and that the Court may use

14  Cooperation Information for the purposes set forth in U.S.S.G

15  § 1B1.8(b) and for determining the sentence to be imposed.

16          d.   In connection with defendant's sentencing, to bring to

17  the Court's attention the nature and extent of defendant's

18  cooperation.

19          e.   If the USAO determines, in its exclusive judgment,

20  that defendant has both complied with defendant's obligations under

21  paragraphs 2 and 3 above and provided substantial assistance to law

22  enforcement in the prosecution or investigation of another

23  ("substantial assistance"), to move the Court pursuant to U.S.S.G.

24  § 5K1.1 to fix an offense level and corresponding guideline range

25  below that otherwise dictated by the sentencing guidelines, and to

26  recommend a term of imprisonment within this reduced range.

27

28

1           DEFENDANT'S UNDERSTANDINGS REGARDING COOPERATION

2       7.   Defendant understands the following:

3           a.   Any knowingly false or misleading statement by
4  defendant will subject defendant to prosecution for false statement,
5  obstruction of justice, and perjury and will constitute a breach by
6  defendant of this agreement.

7           b.   Nothing in this agreement requires the USAO or any
8  other prosecuting, enforcement, administrative, or regulatory
9  authority to accept any cooperation or assistance that defendant may
10 offer, or to use it in any particular way.

11          c.   Defendant cannot withdraw defendant's guilty pleas if
12 the USAO does not make a motion pursuant to U.S.S.G. § 5K1.1 for a
13 reduced guideline range or if the USAO makes such a motion and the
14 Court does not grant it or if the Court grants such a USAO motion but
15 elects to sentence above the reduced range.

16          d.   At this time the USAO makes no agreement or
17 representation as to whether any cooperation that defendant has
18 provided or intends to provide constitutes or will constitute
19 substantial assistance.  The decision whether defendant has provided
20 substantial assistance will rest solely within the exclusive judgment
21 of the USAO.

22          e.   The USAO's determination whether defendant has
23 provided substantial assistance will not depend in any way on whether
24 the government prevails at any trial or court hearing in which
25 defendant testifies or in which the government otherwise presents
26 information resulting from defendant's cooperation.

27

28

1

## NATURE OF THE OFFENSES

2    8.   Defendant understands that for defendant to be guilty of

3   the crime charged in Count One of the Information, that is,

4   Conspiracy to Defraud the United States, in violation of Title 18,

5   United States Code, Section 371, the following must be true:

6            a)   First, beginning on a date unknown but no later
             than on or about April 1, 2011, and continuing until
7            present, there was an agreement between two or more
             persons to defraud the United States by obstructing
8            the lawful functions of the Department of Homeland
             Security, Citizenship and Immigration Services, and
9            Department of Defense, U.S. Army, by deceitful or
             dishonest means;
10
             b)   Second, the defendant became a member of the
11           conspiracy knowing of at least one of its objects and
             intending to help accomplish it; and
12
             c)   Third, one of the members of the conspiracy
13           performed at least one overt act on or after April 1,
             2011, for the purpose of carrying out the conspiracy.
14
15    9.   Defendant understands that for defendant to be guilty of

16   the crime charged in Count Two of the Information, that is, Fraud and

17   Misuse of Visas, Permits, and Other Documents (False Statement), in

18   violation of 18 U.S.C. § 1546(a), the following must be true:

19           a)   First, the defendant made or subscribed as true a
             false statement;
20
             b)   Second, the defendant acted with knowledge that
21           the statement was untrue;

22           c)   Third, the statement was material to the
             activities or decisions of the CIS, that is, had a
23           natural tendency to influence, or was capable of
             influencing, the agency's decisions or activities;
24
             d)   Fourth, the statement was made under oath or
25           penalty of perjury; and

26           e)   Fifth, the statement was made on an application,
             affidavit or other document required by immigration
27           laws or regulations.

28

PENALTIES

10.   Defendant understands that the statutory maximum sentence that the Court can impose for Count One, that is, Conspiracy to Defraud the United States, in violation of Title 18, United States Code, Section 371, is: up to 5 years imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

11.   Defendant understands that the statutory maximum sentence that the Court can impose for Count Two, that is, Fraud and Misuse of Visas, Permits and other Documents, in violation of 18 U.S.C. § 1546(a), is: not more than 10 years imprisonment; a 3-year period of supervised release; a fine of $ 250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $ 100.

12.   Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: 15 years imprisonment; a 3-year period of supervised release; a fine of $500,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $200.

13.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could

1  result in defendant serving a total term of imprisonment greater than
2  the statutory maximum stated above.

3      14.  Defendant understands that, by pleading guilty, defendant
4  may be giving up valuable government benefits and valuable civic
5  rights, such as the right to vote, the right to possess a firearm,
6  the right to hold office, and the right to serve on a jury.
7  Defendant understands that once the court accepts defendant's guilty
8  plea, it will be a federal felony for defendant to possess a firearm
9  or ammunition.  Defendant understands that the conviction in this
10 case may also subject defendant to various other collateral
11 consequences, including but not limited to revocation of probation,
12 parole, or supervised release in another case and suspension or
13 revocation of a professional license.  Defendant understands that
14 unanticipated collateral consequences will not serve as grounds to
15 withdraw defendant's guilty plea.

16     15.  Defendant understands that, if defendant is not a United
17 States citizen, the felony conviction in this case may subject
18 defendant to: removal, also known as deportation, which may, under
19 some circumstances, be mandatory; denial of citizenship; and denial
20 of admission to the United States in the future.  The court cannot,
21 and defendant's attorney also may not be able to, advise defendant
22 fully regarding the immigration consequences of the felony conviction
23 in this case.  Defendant understands that unexpected immigration
24 consequences will not serve as grounds to withdraw defendant's guilty
25 plea.

26                              FACTUAL BASIS

27     16.  Defendant admits that defendant is, in fact, guilty of the
28 offenses to which defendant is agreeing to plead guilty.  Defendant

                                    9

1   and the USAO agree to the statement of facts provided at Exhibit B

2   and agree that this statement of facts is sufficient to support pleas

3   of guilty to the charges described in this agreement and to establish

4   the Sentencing Guidelines factors set forth in paragraph 17 below but

5   is not meant to be a complete recitation of all facts relevant to the

6   underlying criminal conduct or all facts known to either party that

7   relate to that conduct.

8                            SENTENCING FACTORS

9        17.  Defendant understands that in determining defendant's

10  sentence the Court is required to calculate the applicable Sentencing

11  Guidelines range and to consider that range, possible departures

12  under the Sentencing Guidelines, and the other sentencing factors set

13  forth in 18 U.S.C. § 3553(a).  Defendant understands that the

14  Sentencing Guidelines are advisory only, that defendant cannot have

15  any expectation of receiving a sentence within the calculated

16  Sentencing Guidelines range, and that after considering the

17  Sentencing Guidelines and the other § 3553(a) factors, the Court will

18  be free to exercise its discretion to impose any sentence it finds

19  appropriate up to the maximum set by statute for the crimes of

20  conviction.

21       18.  Defendant and the USAO agree to the following applicable

22  Sentencing Guidelines factors:

23    Base Offense Level:              11            U.S.S.G. § 2L2.1

24  Defendant and the USAO reserve the right to argue that additional

25  specific offense characteristics, adjustments, and departures under

26  the Sentencing Guidelines are appropriate.

27       19.  Defendant understands that there is no agreement as to

28  defendant's criminal history or criminal history category.

20.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

21.   Defendant understands that by pleading guilty, defendant gives up the following rights:

a.   The right to persist in a plea of not guilty.

b.   The right to a speedy and public trial by jury.

c.   The right to be represented by counsel - and if necessary have the court appoint counsel - at trial.   Defendant understands, however, that, defendant retains the right to be represented by counsel - and if necessary have the court appoint counsel - at every other stage of the proceeding.

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.   The right to confront and cross-examine witnesses against defendant.

f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

1      WAIVER OF APPEAL OF CONVICTION

2      22.   Defendant understands that, with the exception of an appeal

3      based on a claim that defendant's guilty pleas were involuntary, by

4      pleading guilty defendant is waiving and giving up any right to

5      appeal defendant's convictions on the offenses to which defendant is

6      pleading guilty.

7      LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

8      23.   Defendant agrees that, provided the Court imposes a total

9      term of imprisonment on all counts of conviction of no more than 10

10     months, defendant gives up the right to appeal all of the following:

11     (a) the procedures and calculations used to determine and impose any

12     portion of the sentence; (b) the term of imprisonment imposed by the

13     Court; (c) the fine imposed by the court, provided it is within the

14     statutory maximum; (d) the term of probation or supervised release

15     imposed by the Court, provided it is within the statutory maximum;

16     and (e) any of the following conditions of probation or supervised

17     release imposed by the Court: the conditions set forth in General

18     Orders 318, 01-05, and/or 05-02 of this Court; the drug testing

19     conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the

20     alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

21     24.   The USAO agrees that, provided (a) all portions of the

22     sentence are at or below the statutory maximum specified above and

23     (b) the Court imposes a term of imprisonment of no less than 4

24     months, the USAO gives up its right to appeal any portion of the

25     sentence.

26     RESULT OF WITHDRAWAL OF GUILTY PLEA

27     25.   Defendant agrees that if, after entering guilty pleas

28     pursuant to this agreement, defendant seeks to withdraw and succeeds

12

1  in withdrawing defendant's guilty pleas on any basis other than a

2  claim and finding that entry into this plea agreement was

3  involuntary, then (a) the USAO will be relieved of all of its

4  obligations under this agreement, including in particular its

5  obligations regarding the use of Cooperation Information; and (b) in

6  any investigation, criminal prosecution, or civil, administrative, or

7  regulatory action, defendant agrees that any Cooperation Information

8  and any evidence derived from any Cooperation Information shall be

9  admissible against defendant, and defendant will not assert, and

10 hereby waives and gives up, any claim under the United States

11 Constitution, any statute, or any federal rule, that any Cooperation

12 Information or any evidence derived from any Cooperation Information

13 should be suppressed or is inadmissible.

14              EFFECTIVE DATE OF AGREEMENT

15     26.  This agreement is effective upon signature and execution of

16 all required certifications by defendant, defendant's counsel, and an

17 Assistant United States Attorney.

18               BREACH OF AGREEMENT

19     27.  Defendant agrees that if defendant, at any time after the

20 signature of this agreement and execution of all required

21 certifications by defendant, defendant's counsel, and an Assistant

22 United States Attorney, knowingly violates or fails to perform any of

23 defendant's obligations under this agreement ("a breach"), the USAO

24 may declare this agreement breached.  For example, if defendant

25 knowingly, in an interview, before a grand jury, or at trial, falsely

26 accuses another person of criminal conduct or falsely minimizes

27 defendant's own role, or the role of another, in criminal conduct,

28 defendant will have breached this agreement.  All of defendant's

1   obligations are material, a single breach of this agreement is

2   sufficient for the USAO to declare a breach, and defendant shall not

3   be deemed to have cured a breach without the express agreement of the

4   USAO in writing.  If the USAO declares this agreement breached, and

5   the Court finds such a breach to have occurred, then:

6          a.   If defendant has previously entered guilty pleas

7   pursuant to this agreement, defendant will not be able to withdraw

8   the guilty pleas.

9          b.   The USAO will be relieved of all its obligations under

10  this agreement; in particular, the USAO: (i) will no longer be bound

11  by any agreements concerning sentencing and will be free to seek any

12  sentence up to the statutory maximum for the crimes to which

13  defendant has pleaded guilty; and (ii) will no longer be bound by any

14  agreement regarding the use of Cooperation Information and will be

15  free to use any Cooperation Information in any way in any

16  investigation, criminal prosecution, or civil, administrative, or

17  regulatory action.

18         c.   The USAO will be free to criminally prosecute

19  defendant for false statement, obstruction of justice, and perjury

20  based on any knowingly false or misleading statement by defendant.

21         d.   In any investigation, criminal prosecution, or civil,

22  administrative, or regulatory action: (i) defendant will not assert,

23  and hereby waives and gives up, any claim that any Cooperation

24  Information was obtained in violation of the Fifth Amendment

25  privilege against compelled self-incrimination; and (ii) defendant

26  agrees that any Cooperation Information and any Plea Information, as

27  well as any evidence derived from any Cooperation Information or any

28  Plea Information, shall be admissible against defendant, and

14

1   defendant will not assert, and hereby waives and gives up, any claim

2   under the United States Constitution, any statute, Rule 410 of the

3   Federal Rules of Evidence, Rule 11(f) of the Federal Rules of

4   Criminal Procedure, or any other federal rule, that any Cooperation

5   Information, any Plea Information, or any evidence derived from any

6   Cooperation Information or any Plea Information should be suppressed

7   or is inadmissible.

8                    COURT AND PROBATION OFFICE NOT PARTIES

9        28.  Defendant understands that the Court and the United States

10  Probation Office are not parties to this agreement and need not

11  accept any of the USAO's sentencing recommendations or the parties'

12  agreements to facts or sentencing factors.

13       29.  Defendant understands that both defendant and the USAO are

14  free to: (a) supplement the facts by supplying relevant information

15  to the United States Probation Office and the Court, (b) correct any

16  and all factual misstatements relating to the Court's Sentencing

17  Guidelines calculations and determination of sentence, and (c) argue

18  on appeal and collateral review that the Court's Sentencing

19  Guidelines calculations and the sentence it chooses to impose are not

20  error, although each party agrees to maintain its view that the

21  calculations in paragraph 18 are consistent with the facts of this

22  case.  While this paragraph permits both the USAO and defendant to

23  submit full and complete factual information to the United States

24  Probation Office and the Court, even if that factual information may

25  be viewed as inconsistent with the facts agreed to in this agreement,

26  this paragraph does not affect defendant's and the USAO's obligations

27  not to contest the facts agreed to in this agreement.

28

30.   Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement.   Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

31.   Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

<u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

32.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

STEPHANIE YONEKURA
Acting United States Attorney

_____          MARCH 7, 2015
ANNE PINGS                                 Date
Assistant United States Attorney

_____          _____

16

_____        March 7, 2015
MOHAMED M. MADNIA                        Date
Defendant

_____        March 7, 2015
KENNETH A. REED                          Date
Attorney for Defendant Madnia

### CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.


_____           March 7, 2015
MOHAMED M. MADNIA                           Date
Defendant

1                    CERTIFICATION OF DEFENDANT'S ATTORNEY

2        I am MOHAMED M. MADNIA'S attorney.  I have carefully and

3   thoroughly discussed every part of this agreement with my client.

4   Further, I have fully advised my client of his rights, of possible

5   pretrial motions that might be filed, of possible defenses that might

6   be asserted either prior to or at trial, of the sentencing factors

7   set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

8   provisions, and of the consequences of entering into this agreement.

9   To my knowledge: no promises, inducements, or representations of any

10  kind have been made to my client other than those contained in this

11  agreement; no one has threatened or forced my client in any way to

12  enter into this agreement; my client's decision to enter into this

13  agreement is an informed and voluntary one; and the factual basis set

14  forth in this agreement is sufficient to support my client's entry of

15  guilty pleas pursuant to this agreement.

16

17  _____          3/7/15 _____
    KENNETH A. REED                              Date
18  Attorney for Defendant Madnia

19

20

21

22

23

24

25

26

27

28

1

<u>Exhibit A</u>

2

3

4

5

6

7                       UNITED STATES DISTRICT COURT

8              FOR THE CENTRAL DISTRICT OF CALIFORNIA

9                          SOUTHERN DIVISION

10

11   UNITED STATES OF AMERICA,          SA CR No.

12            Plaintiff,                <u>I N F O R M A T I O N</u>

13            v.                        [18 U.S.C. § 371: Conspiracy to
                                        Defraud the United States;
14   MOHAMED M. MADNIA,                 18 U.S.C. § 1546(a): Fraud and
                                        Misuse of Visas, Permits, and
15            Defendant.                Other Documents]

16

17

18       The United States Attorney charges:

19                          COUNT ONE

20                       [18 U.S.C. § 371]

21   A.   <u>INTRODUCTORY ALLEGATIONS</u>

22       At all times relevant to this Information:

23       1.   An alien could obtain lawful permanent resident status, and

24   ultimately United States citizenship, based on a legitimate marriage

25   to a United States citizen.  Entering into marriage fraudulently to

26   obtain an immigration benefit was a violation of Title 8, United

27   States Code, Section 1325(c).

28

2.    A United States citizen could file a Form I-129F (Petition for Alien Fiancé(e)) with United States Citizenship and Immigration Services ("USCIS") to obtain a visa to allow a fiancé(e) or spouse to enter the United States.

3.    The Form I-129F included the following warnings:

> PENALTIES: You may by law be imprisoned for not more than five years, or fined $250,000, or both, for entering into a marriage contract for the purpose of evading any provision of the immigration laws, and you may be fined up to $10,000 or imprisoned up to five years, or both, for knowingly and willfully falsifying or concealing a material fact or using any false document in submitting this petition. [. . .].

> YOUR CERTIFICATION: [. . .] I certify, under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

4.    If a United States citizen married an alien outside the United States, the United States citizen could apply to USCIS for conditional permanent resident status for his alien spouse by filing a Form I-130 (Petition for Alien Relative).

5.    The statements on the I-129F and the I-130 would be made under penalty of perjury.

6.    Conditional permanent resident status allowed the alien spouse to remain and work in the United States.  However, the alien spouse's resident status was conditional and would expire automatically after two years if the conditions on that residency were not removed.

7.    After two years, the United States citizen could file a Form I-751 (Petition to Remove Conditions of Residency) to make the alien spouse's resident status permanent.  Both the United States citizen and the alien spouse would be required to sign the Form I-751 under penalty of perjury, certifying that they were still living

1  together in a marital union and that the marriage was not for the
2  purpose of obtaining an immigration benefit.  If approved, the
3  conditions on the alien spouse's resident status would be removed,
4  and the alien spouse would become a lawful permanent resident
5  ("LPR").  The alien would then receive a permanent residency card,
6  sometimes commonly referred to as a "green card."

7      8.  After maintaining lawful permanent resident status as a
8  spouse of a United States citizen for three years, the alien spouse
9  could apply for United States citizenship using Form N-400
10  (Application for Naturalization).  To be eligible for United States
11  citizenship, the alien spouse was required to show, among other
12  things, that s/he was lawfully admitted as a permanent resident, that
13  s/he had continued to live in a marital union with the U.S. citizen
14  spouse for the past three years, and that s/he had been a person of
15  good moral character.

16      9.  The United States Army provided servicemembers who were
17  married with a Basic Allowance for Housing intended to be used to pay
18  for housing and other expenses for the spouses of servicemembers.
19  This Basic Housing Allowance was disbursed to servicemembers along
20  with base pay on a bi-monthly basis.

21      10.  On or about March 5, 2011, A.E., an Egyptian citizen, and
22  N.D., a Ukrainian citizen, were married in a wedding ceremony in
23  Egypt.  The two maintained a continuous relationship with each other
24  characteristic of a marital union.

25  B.  THE OBJECT OF THE CONSPIRACY

26      11.  Beginning on a date unknown to the United States Attorney
27  no later than on or about April 1, 2011, continuing until the
28  present, in Orange and Los Angeles Counties, within the Central

1  District of California, and the Western District of Texas, and

2  elsewhere, defendant MOHAMED M. MADNIA ("MADNIA"), N.D., and A.E.

3  unlawfully, willfully, and knowingly did combine, conspire,

4  confederate, and agree to defraud the United States and agencies

5  thereof by obstructing the lawful functions of the Department of

6  Homeland Security, Citizenship and Immigration Services, and the

7  Department of Defense, U.S. Army, by deceitful and dishonest means.

8  C.   THE MANNER AND MEANS OF THE CONSPIRACY

9       12.   The object of the conspiracy was to be carried out, and was

10  carried out, in substance, as follows:

11           a.   In an effort to obtain immigration benefits for N.D.,

12  and increased Basic Housing Allowance from the U.S. Army, defendant

13  MADNIA, a United States citizen, would enter into a fraudulent

14  marriage with N.D.

15           b.   In an effort to obtain immigration benefits for N.D.,

16  defendant MADNIA would submit to USCIS documents under penalty of

17  perjury and would make statements to USCIS under penalty of perjury

18  that were materially false in that they had a tendency to suggest

19  that N.D. was qualified for immigration benefits based on her status

20  as the spouse of defendant MADNIA, where the production of truthful

21  information would have led to the discovery of facts raising the

22  inference that the marriage was fraudulent and in violation of

23  Title 8, United States Code, Section 1325(c).

24           c.   In an effort to receive money for his role in the

25  fraudulent marriage, defendant MADNIA claimed and collected

26  additional Basic Housing Allowance from the U.S. Army based on his

27  marriage to N.D.

28

4

D.   OVERT ACTS

13.   In furtherance of this conspiracy and to accomplish its objects, defendant MADNIA and N.D. and A.E. committed and willfully caused others to commit the following overt acts, among others, within the Central District of California and elsewhere:

Overt Act No. 1:  On or about April 30, 2011, defendant MADNIA, a United States citizen, was married to N.D., an alien, in Kiev, Ukraine.  At the time of the marriage, defendant MADNIA believed N.D. was already married to A.E.   Prior to traveling to the Ukraine for their wedding, defendant MADNIA had never met N.D. Neither defendant MADNIA nor N.D. intended to establish a life together, and defendant MADNIA and N.D. have not lived together as husband and wife.

Overt Act No. 2:  On or about July 12, 2011, defendant MADNIA prepared and submitted to USCIS a Form I-130 (Petition for Alien Relative) by which he sought to obtain conditional permanent resident status for N.D. on the basis of her fraudulent marriage to defendant MADNIA.

Overt Act No. 3:  On or about October 10, 2011, defendant MADNIA prepared and submitted to USCIS a Form I-129F (Petition for Alien Fiancé(e)) by which he sought to obtain a visa for N.D. to travel to enter the United States.

Overt Act No. 4:  On the Form I-129F, defendant MADNIA responded to Question 18, as follows:

> Has your Fiancé(e) met and seen you within the two-year period immediately preceding the filing of this petition?

> Yes.  We did meet in Egypt a few years ago, We have been talking about getting married but because I can't send her a plane ticket to get married in the states, I applied for leave to my commander I left to the

5

1           Ukraine and we got married APR 30, 2011 it was a small
          event just family and friends which was not too many
2           but it was a great day to the both of us.

3 Defendant MADNIA knew that the statement that he met N.D. in Egypt a

4 few years before their wedding was false.   The statement had a

5 natural tendency to influence, or was capable of influencing, the

6 decisions or activities of USCIS because it concealed the fact that

7 defendant MADNIA had participated in a marriage to a person he had

8 never met, a fact which may have led USCIS to discover defendant

9 MADNIA's crime of marriage fraud and to deny his petitions for N.D.

10 to travel into the United States and to be granted conditional

11 resident status on the basis of her marriage to defendant MADNIA.

12        Overt Act No. 5:  On or about February 14, 2012, N.D.

13 entered the United States as a conditional permanent resident at Los

14 Angeles International Airport in the Central District of California,

15 defendant MADNIA's I-129F and I-130 petitions having been granted by

16 USCIS.

17        Overt Act No. 6:  After N.D. entered the United States,

18 defendant MADNIA lived in the Central District of California, while

19 N.D. and A.E. lived together as husband and wife in the Northern

20 District of California and had a child together in January 2013.

21        Overt Act No. 7:  After defendant MADNIA married N.D. in

22 the Ukraine, he informed the U.S. Army that he was married and

23 collected an increased amount of Basic Housing Allowance based on his

24 marriage.

25

26

27

28

1                              COUNT TWO

2                         [18 U.S.C. § 1546(a)]

3        1.   The allegations set forth in paragraphs 1 through 13 of

4   Count One are realleged as if fully set forth herein.

5        2.   On or about October 10, 2011, defendant MADNIA knowingly

6   made under oath, and as permitted under penalty of perjury under

7   Section 1746 of Title 28, United States Code, knowingly subscribed as

8   true, a false statement with respect to a material fact in an

9   application, affidavit, and other document required by the

10  immigration laws and regulations prescribed thereunder, and knowingly

11  presented to USCIS such application, affidavit, and other document

12  which contained such false statement and which failed to contain any

13  reasonable basis in law or fact.

14       3.   Specifically, on or about October 10, 2011, defendant

15  MADNIA prepared and submitted Form I-129F (Petition for Alien

16  Fiancé(e)) to USCIS and through the submission of this document he

17  sought to obtain a visa for N.D. to travel to enter the United

18  States.

19       4.   On the Form I-129F, defendant MADNIA responded to Question

20  18, as follows:

21           Has your Fiancé(e) met and seen you within the two-
             year period immediately preceding the filing of this
22           petition?

23           Yes.  We did meet in Egypt a few years ago, We have
             been talking about getting married but because I can't
24           send her a plane ticket to get married in the states,
             I applied for leave to my commander I left to the
25           Ukraine and we got married APR 30, 2011 it was a small
             event just family and friends which was not too many
26           but it was a great day to the both of us.

27       5.   The Form I-129F bears the following warnings:

28           PENALTIES: You may by law be imprisoned for not more
             than five years, or fined $250,000, or both, for
                                     7

entering into a marriage contract for the purpose of
evading any provision of the immigration laws, and you
may be fined up to $10,000 or imprisoned up to five
years, or both, for knowingly and willfully falsifying
or concealing a material fact or using any false
document in submitting this petition. [. . .].

YOUR CERTIFICATION: [. . .] I certify, under penalty
of perjury under the laws of the United States of
American, that the foregoing is true and correct.

6. As defendant MADNIA well knew at the time he made the
statement, his statement that he met N.D. in Egypt a few years before
their marriage was false. The statement had a natural tendency to
influence, or was capable of influencing, the decisions or activities
of USCIS because it concealed the fact that defendant MADNIA had
participated in a marriage to a person he had never met, a fact which
may have led USCIS to discover defendant MADNIA's crime of marriage
fraud, to deny his petition for N.D.'s conditional resident status on
the basis of her marriage to defendant MADNIA, and to deny his
petition for N.D. to travel into the United States, as N.D. did on
February 14, 2012, when she entered the United States at Los Angeles
International Airport, in the Central District of California.

STEPHANIE YONEKURA
Acting United States Attorney


ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

PATRICK R. FITZGERALD
Assistant United States Attorney
Chief, National Security Section

ANNE PINGS
Assistant United States Attorney
National Security Section

EXHIBIT B

<u>FACTUAL BASIS</u>

1.    Nataliia Doroshenko ("Doroshenko") is a Ukraine citizen.

2.    Ahmed Elgeddawy ("Elgeddawy") is an Egyptian citizen.

3.    Doroshenko married Elgeddawy in a ceremony in Egypt on March 5, 2011.

4.    For the purpose of evading immigration laws, and in order to obtain lawful residency status and/or United States citizenship, Doroshenko and Elgeddawy each entered into fraudulent marriages to United States citizens.

5.    In April 2011, while they were in the U.S. Army together, Elgeddawy's brother, Khaled El Gedawi, asked defendant MADNIA to marry his brother's wife, Doroshenko, so that Doroshenko could come to the United States from Ukraine and be with her husband, Elgeddawy. In return, defendant MADNIA would collect a higher Basic Housing Allowance from the Army based on his marriage to Doroshenko.

6.    On or about April 30, 2011, defendant MADNIA traveled to the Ukraine where he married DOROSHENKO even though he believed she was already married to Elgeddawy.  Prior to traveling to Ukraine for their wedding, defendant MADNIA had never met Doroshenko or Elgeddawy.

7.    On or about June 30, 2011, defendant MADNIA wrote a letter to the Department of the Army asking for assistance in expediting the immigration process for Doroshenko stating, "I do need my wife to be beside me to help me with my daily life, at this moment I'm on quarters and in bed alone with no social support what so ever."

8.    On or about July 12, 2011, defendant MADNIA prepared and submitted a Form I-130 (Petition for Alien Relative) to the United

1  States Citizenship and Immigration Services ("USCIS") by which he
2  sought to obtain conditional permanent resident status for Doroshenko
3  on the basis of her marriage to defendant MADNIA.

4      9.   On or about October 10, 2011, defendant MADNIA prepared and
5  submitted a Form I-129F (Petition for Alien Fiancé(e)) to USCIS by
6  which he sought to obtain a visa for Doroshenko to travel to enter
7  the United States.

8      10.  On the Form I-129F, defendant MADNIA responded to Question
9  18, as follows:

Has your Fiancé(e) met and seen you within the two-year period immediately preceding the filing of this petition?

Yes.  We did meet in Egypt a few years ago, We have been talking about getting married but because I can't send her a plane ticket to get married in the states, I applied for leave to my commander I left to the Ukraine and we got married APR 30, 2011 it was a small event just family and friends which was not too many but it was a great day to the both of us.

11.  The Form 129F bears the following warning:

PENALTIES: You may by law be imprisoned for not more than five years, or fined $250,000, or both, for entering into a marriage contract for the purpose of evading any provision of the immigration laws, and you may be fined up to $10,000 or imprisoned up to five years, or both, for knowingly and willfully falsifying or concealing a material fact or using any false document in submitting this petition. [. . .].

YOUR CERTIFICATION: [. . .] I certify, under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

24     12.  Defendant MADNIA's statement that he met Doroshenko in
25  Egypt a few years before their wedding was false.  The statement had
26  a natural tendency to influence, or was capable of influencing, the
27  decisions or activities of USCIS because it concealed the fact that
28  defendant MADNIA had participated in a marriage to a person he had

2

1   never met, a fact which may have led USCIS to discover defendant

2   MADNIA's crime of marriage fraud and to deny his petitions for

3   Doroshenko to travel into the United States and to be granted

4   conditional resident status on the basis of her marriage to defendant

5   MADNIA.

6       13.   On November 1, 2011, a U.S. Army commander sent a letter to

7   the USCIS requesting that USCIS expedite defendant MADNIA's I-129F

8   petition for Doroshenko to be allowed to travel to the United States

9   and his I-130 petition granting her conditional permanent resident

10  status.

11      14.   On November 4, 2011, USCIS approved the I-129F (Petition

12  for Alien Fiancé(e)) and I-130 (Petition for Alien Relative) thereby

13  granting Doroshenko a visa to enter the United States and authorizing

14  her to apply to be conditional permanent resident of the United

15  States on the basis of her marriage to defendant MADNIA.

16      15.   Doroshenko entered the United States on February 14, 2012,

17  through Los Angeles International Airport in the Central District of

18  California.

19      16.   Defendant MADNIA and Doroshenko did not live together as

20  husband and wife and neither ever intended to establish a life

21  together.

22      17.   Defendant MADNIA understood that Elgeddawy and Doroshenko

23  lived together as husband and wife in an apartment near San

24  Francisco.  Defendant MADNIA knew that Doroshenko and Elgeddawy had a

25  child together in January 2013.

26      18.   Defendant MADNIA knew that Elgeddawy had married A.C., a

27  United States citizen, so that Elgeddawy could obtain immigration

28  benefits for himself.

19.   Defendant MADNIA collected increased Basic Allowance for Housing based on his representation to the U.S. Army that he was married to Doroshenko.